UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ALABAMA
SELMA DIVISION

HENRY ROBERT COLE,

    PLAINTIFF,

v.

    Civil Case No.: 2:25-cv-165

    JURY DEMAND

NELNET, INC.,

    DEFENDANT.

## COMPLAINT

COMES NOW Plaintiff, Henry Robert Cole ("Mr. Cole" or "Plaintiff"), by counsel, and hereby files his Complaint ("Complaint") against Defendant Nelnet, Inc. ("Nelnet" or "Defendant"), as follows:

## INTRODUCTION

1. This is an action for actual, statutory, and punitive damages, attorneys' fees, and costs, brought pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq*. ("FCRA").

2. The purpose of the FCRA is to require consumer reporting agencies to "adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681.

3. In furtherance of its underlying purposes, the FCRA sets out the requirements and obligations on persons who furnish information to consumer reporting agencies, pursuant to 15 U.S.C. §§ 1681s-2(b), *et seq*, to take after receipt of notice that a consumer disputes the accuracy of an item of information, such as an account.

4. Accordingly, the FCRA holds furnishers, such as Nelnet, responsible for taking reasonable steps to correct inaccurate information once the furnisher receives notice of a consumer's dispute from a consumer reporting agency.

5. "Mixed files" create a false description of a consumer's credit history.

6. A "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.

7. The Federal Trade Commission ("FTC") defines a mixed file as a file that "refers to a Consumer Report in which some or all of the information pertains to Persons other than the Person who is the subject of that Consumer Report." *F.T.C. v. TRW, Inc.* 784 F. Supp. 361, 362 (N.D. Tex. 1991).

8. Mixed files are not a new phenomenon. The defendant has been on notice of the existence of mixed files for over forty (40) years. *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509, 511 (5th Cir. 1982).

9. Further, in the 1990's the FTC filed an enforcement action against the nationwide consumer reporting agencies ("NCRAs") because of their failure to comply with the FCRA, including the mixing of consumers' files. Similarly, the Attorneys General of several states filed a lawsuit against the NCRAs because of their failure to comply with the FCRA, including the mixing of consumers' files, which resulted in an Agreement of Assurances with the Attorneys General of 18 states to prevent mixed files.

10. More recently, the NCRAs have been the subject of numerous state attorney general actions relating to mixed files. For example, the New York Attorney General filed charges and

settled claims with the defendant over mixed files.[1] *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion LLC.* Nelnet is aware or should have been aware of this enforcement action.

11. In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the NCRA's credit reporting practices, including the incidence of mixed files. Thirty-one states participated in the enforcement action, including Alabama. Nelnet is aware or should have been aware of this enforcement action.

12. Notwithstanding private lawsuits and government enforcement actions, mixed files continue to occur despite consumers' unique personal identifying information.

13. Plaintiff's credit reports included accounts opened or serviced, or both, by Nelnet.

14. The accounts belong to a different consumer.

15. During the two years preceding the date of Plaintiff's Complaint, Plaintiff disputed the accounts to one or more consumer reporting agencies.

16. At least one consumer reporting agency notified Nelnet of Plaintiff's disputes on no less than two separate occasions.

17. In response, Nelnet failed to conduct a reasonable investigation of Plaintiff's disputes and consider all relevant information available to it.

18. Instead, Nelnet erroneously concluded the accounts belonged to Plaintiff and Plaintiff was responsible to repay the thousands of dollars in student loan debt.

---

[1] http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited April 22, 2025; *see also* https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf Last visited April 22, 2025.

19. In the last three years, the Better Business Bureau ("BBB") has received over 1,100 complaints related to Nelnet.[2]

20. Likewise, in the last three years, the Consumer Financial Protection Bureau ("CFPB") has received almost 5,000 complaints related to Nelnet.[3]

21. A cursory review of the PACER dockets yields dozens of lawsuits filed against Nelnet of the last three years wherein a claim was made under the FCRA.

22. "Evidence that a defendant has repeatedly engaged in prohibited conduct while knowing or suspecting that it was unlawful would provide relevant support for an argument that strong medicine is required to cure the defendant's disrespect for the law." *Dalton v. CAI*, 257 F.3d 409, 418 (4th Cir. 2001)(noting that whether "other consumers have lodged complaints similar to Dalton's against CAI" is relevant to willfulness under the FCRA).

23. As set forth below, Plaintiff suffered concrete and particularized harm because of Nelnet's multiple (no less than twenty-eight) and repeated violations of the FCRA.

## PARTIES

24. Plaintiff is an adult resident of this judicial district

25. Plaintiff is a consumer as defined by the FCRA.

26. Defendant Nelnet is a foreign corporation with its principal place of business located in 121 South 13th Street, Lincoln, NE 68508.

---

[2] https://www.bbb.org/us/ne/lincoln/profile/student-loan-services/nelnet-national-educational-loan-network-0714-209000034/complaints Last visited April 22, 2025.

[3] https://www.consumerfinance.gov/data-research/consumer-complaints/search/?company=Nelnet%2C%20Inc.&dateRange=3y&date_received_max=2025-04-22&date_received_min=2022-04-22&has_narrative=true&page=1&searchField=all&searchText=nelnet&size=25&sort=created_date_desc&tab=List  Last visited April 22, 2025.

27. Nelnet is also a "person" and a "furnisher" of information as defined by or otherwise used by and within the FCRA.

28. At all relevant times, Nelnet was doing business in this judicial district.

29. Nelnet's net income in 2024 was approximately $ 176 million, and its net worth is approximately $ 3.8 billion.[4]

## JURISDICTION AND VENUE

30. This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1681p and 28 U.S.C. § 1331 as the events described below occurred in this judicial district.

31. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because the events described below occurred in this judicial district.

## FACTUAL ALLEGATIONS

32. Between 2011 and 2012, Plaintiff's brother applied for seven (7) student loan accounts with the Department of Education.

33. In connection with the loan applications, upon information and belief, Plaintiff's brother provided his own name, Social Security number, date of birth, phone number and address.

34. While Plaintiff's brother has the same first and last name as Plaintiff, he has a different middle name, Social Security number, date of birth, phone number and address.

35. The Department of Education approved the loan applications and opened seven (7) different accounts in Plaintiff's brother's name and with the partial account number 71399XXXX (hereinafter, the "Accounts").

---

[4] https://www.nelnetinvestors.com/news/press-release-details/2025/Nelnet-Reports-Fourth-Quarter-2024-Results/default.aspx#:~:text=Net%20income%20in%202024%2C%20excluding,%243.25%20per%20share%2C%20for%202023. Last visited April 22, 2025.

5

36. Defendant serviced the Accounts.

37. In connection with serving the Accounts, upon information and belief, Nelnet reported the Accounts to consumer reporting agencies and with Plaintiff's brother's name, address, Social Security number, phone number and date of birth.

38. Notwithstanding, in or around 2023, Plaintiff discovered the Accounts appeared on his credit file.

39. The Accounts are inaccurate because Plaintiff did not apply for or open the Accounts.

40. Plaintiff did not receive any goods, benefits, or services in connection with the Accounts.

41. In other words, the Accounts do not belong to Plaintiff or relate to his credit history.

42. Between April 2023 and April 2024, Plaintiff disputed the Accounts to at least one consumer reporting agency.

43. Upon information and belief, Nelnet received no less than fourteen (14) disputes from a consumer reporting agency related to the Accounts.

44. Upon information and belief, Nelnet received legible images of the following documents related to Plaintiff's disputes made to consumer reporting agencies:

   a. Plaintiff's dispute letters;

   b. Plaintiff's driver's license;

   c. Social Security card;

   d. Health insurance billing statement; and,

   e. Mortgage statement.

45. Nelnet also received the following information, *inter alia*, in connection with Plaintiff's disputes made to the consumer reporting agencies:

    a. Plaintiff never applied for the Accounts;

    b. Cell phone number;

    c. Date of birth;

    d. Social Security number;

    e. Current address;

    f. Handwriting sample; and,

    g. Signature exemplar.

46. Notwithstanding, Nelnet verified the Accounts belonged to Plaintiff no less than fourteen (14) times and continued credit reporting the Account to consumer reporting agencies.

47. As stated above, Nelnet received notice of Plaintiff's disputes and supporting documents from consumer reporting agencies.

48. Notwithstanding, Nelnet, upon information and belief, did not contact the third parties, such as the Department of Education or the education institution related to the Accounts, to validate or otherwise invalidate Plaintiff's disputes.

49. Nelnet failed to review all relevant information or documents, or both, supplied by the consumer reporting agencies related to Plaintiff's disputes.

50. Nelnet failed to review information in its own records in connection with any purported FCRA investigation related to the Account.

51. For example, Nelnet did not take any steps to reconcile the different date of birth and Social Security number associated with the Accounts and Plaintiff's date of birth and Social which differed, in any of its purported FCRA investigations.

52. Had it, then Nelnet would have known or should have known that the date of birth and Social used to open the Accounts differed belonged to a different consumer – not Plaintiff.

53. Nelnet did not conduct any handwriting analysis of Plaintiff's signatures or signatures related to the Accounts, in connection with any purported FCRA investigation related to the Accounts.

54. At all times pertinent hereto, Nelnet was acting by and through its agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Defendant.

55. As a result of Nelnet's violations of the FCRA, Plaintiff suffered multiple and distinct injuries, including but not limited to adverse credit action, lost credit opportunities, harm to credit reputation and credit score, out-of-pocket expenses, interference with his normal and usual activities, and emotional distress.

## COUNT 1 – VIOLATIONS OF THE FCRA
## 15 U.S.C. § 1681s-2(b)(1)(A)

56. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

57. The FCRA requires Nelnet to conduct a reasonable investigation of the disputed information after receipt of a dispute notice from a consumer reporting agency.

58. Nelnet negligently violated the FCRA when it failed to conduct a reasonable investigation of Plaintiff's disputes received from a consumer reporting agency.

59. In the alternative, Nelnet willfully violated the FCRA when it failed to conduct a reasonable investigation of Plaintiff's disputes received from a consumer reporting agency.

60. As a result of Nelnet's violations of the FCRA, Plaintiff has been damaged as set forth above.

61. Nelnet's conduct in violating 15 U.S.C. §§ 1681s-2(b)(1)(A) was willful, making it liable to Plaintiff for statutory and punitive damages, plus attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n. In the alternative, Nelnet's conduct was negligent, entitling Plaintiff to recover his actual damages, plus attorneys' fees pursuant to 15 U.S.C. § 1681o.

### COUNT 2 – VIOLATIONS OF THE FCRA
### 15 U.S.C. § 1681s-2(b)(1)(B)

62. Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

63. The FCRA requires Nelnet to review all relevant information provided to it by a consumer reporting agency in connection with its investigation of disputed information.

64. Nelnet negligently violated the FCRA when it failed to review all relevant information provided to it by a consumer reporting agency in connection with its investigation of disputed information.

65. In the alternative, Nelnet willfully violated the FCRA when it failed to review all relevant information provided to it by a consumer reporting agency in connection with its investigation of disputed information.

66. As a result of Nelnet's violations of the FCRA, Plaintiff has been damaged as set forth above.

67. Nelnet's conduct in violating 15 U.S.C. §§ 1681s-2(b)(1)(B) was willful, making it liable to Plaintiff for statutory and punitive damages, plus attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n. In the alternative, Defendant's conduct was negligent, entitling Plaintiff to recover his actual damages, plus attorneys' fees pursuant to 15 U.S.C. § 1681o.

### TRIAL BY JURY IS DEMANDED

68. Plaintiff requests a jury trial on all claims.

## **PRAYER**

Wherefore, Plaintiff prays for judgment against Nelnet as follows:

On the First Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

On the Second Claim for Relief:

1. Actual damages to be determined by the jury;
2. Punitive damages to be determined by the jury;
3. Statutory damages to be determined by the jury; and
4. Attorneys' fees and costs.

Dated: April 22, 2025

Respectfully submitted,

*/s/ Micah S. Adkins*
Micah S. Adkins
(ASB-8639-I48A)
**THE ADKINS FIRM, P.C.**
8101 N. Central Expwy., Suite 1000
Dallas, Texas 75206
(214) 974.4030 Main Telephone
(615) 370.4099 Direct
MicahAdkins@ItsYourCreditReport.com

*COUNSEL FOR PLAINTIFF
HENRY ROBERT COLE*

10